IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-00078-01-CR-W-DW |
| | ) | |
| JERMAINE L. GADSON, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Gadson's Motion to Suppress Illegally Obtained Evidence (doc #30). For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On April 8, 2014, the Grand Jury returned a one count indictment against defendant Jermaine L. Gadson. The indictment charges that on December 2, 2012, defendant Gadson, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm.

On February 9, 2015, an evidentiary hearing was held on defendant's motion to suppress. Defendant Gadson was represented by court-appointed counsel, Alex S. McCauley. The Government was represented by Assistant United States Attorney Bruce E. Clark. The Government called Mark Porter, who had retired from the Kansas City, Missouri Police Department in March 2013, and Officer John Dawdy of the Kansas City, Missouri Police Department as witnesses. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On December 2, 2012, Mark Porter was conducting plain-clothes surveillance of a residence. (Tr. at 6) Officer Porter was located in a shopping center just to the south of the residence under surveillance. (Tr. at 7) Officer Porter observed three people get into a vehicle and leave the residence. (Tr. at 7) Officer Porter followed the vehicle. (Tr. at 7) The vehicle proceeded westbound on Longview Road. (Tr. at 7)

2. Officer Porter observed the vehicle enter a traffic circle and then fail to signal as it exited the traffic circle by turning right on an outer road. (Tr. at 10) There was one car between Officer Porter's vehicle and the vehicle that he had followed from the residence as the vehicle entered the traffic circle and turned right. (Tr. at 19) Officer Porter, however, testified that he had a clear view of the vehicle that he had followed. (Tr. at 22) Officer Porter testified that the vehicle between him and the vehicle he was following did not impede his vision whatsoever. (Tr. at 30)

3. The street markings in the traffic circle indicate that a vehicle may go straight or turn right. (Tr. at 11; Government's Ex. 3) Officer Porter testified that based on his knowledge and experience as a police officer, when a person makes a right turn at an intersection, the person is required to signal. (Tr. at 30) Officer Porter further testified that based on his knowledge with respect to this traffic circle, the person driving should have signaled. (Tr. at 30) Officer Porter testified that the person driving the vehicle did not signal before making the right turn. (Tr. at 30) After observing the vehicle's failure to signal, Officer Porter relayed the information to the take-down crew. (Tr. at 11)

4. Officer John Dawdy was involved in the operation involving the residence under surveillance and the investigation of possible narcotics trafficking from that residence. (Tr. at 36) Officer Dawdy testified that he was contacted by Officer Porter who advised that the vehicle that had left the residence had failed to signal for a turn at an intersection. (Tr. at 37) Officer Dawdy stopped the vehicle. (Tr. at 37)

5. Officer Dawdy approached the vehicle and contacted the driver, Jermaine Gadson. (Tr. at 38) Officer Dawdy advised that he had stopped the vehicle because of a traffic violation, i.e. failure to signal for a turn. (Tr. at 38) Officer Dawdy does not recall defendant Gadson contesting the traffic violation. (Tr. at 38-39)

6. Defendant Gadson told Officer Dawdy that he had a couple of city warrants. (Tr. at 39) Officer Dawdy removed Gadson from the vehicle based on Gadson's statement. (Tr. at 39) Officer Dawdy conducted a computer check of Gadson which revealed several warrants for his arrest. (Tr. at 39) Gadson was placed under arrest. (Tr. at 40)

7. When Officer Dawdy had defendant Gadson step out of the vehicle, he detected an odor of marijuana. (Tr. at 39) The other three occupants of the vehicle were asked to exit the vehicle. (Tr. at 40) Computer checks were run on these three. (Tr. at 39) One of the gentlemen in the back seat had two warrants. (Tr. at 39)

8. Based on the odor of marijuana, the officers conducted a search of the vehicle. (Tr. at 40) The officers located marijuana and a stolen firearm. (Tr. at 40) The officers called the Drug Enforcement Unit to advise them of the narcotics that were found and for instructions on who to bring downtown and who to release at the scene. (Tr. at 40)

9. Officer Dawdy testified that the detectives told him to have the vehicle towed. (Tr. at 40) The vehicle was owned by Ms. Vaughn, one of the passengers in the vehicle. (Tr. at 40-41) Ms. Vaughn was taken downtown on an investigative hold for the narcotics found in the vehicle. (Tr. at 41) Officer Dawdy testified that towing the vehicle was consistent with the Kansas City, Missouri Police Department towing procedure. (Tr. at 41) Prior to towing a vehicle, it is standard procedure to inventory items found in the vehicle. (Tr. at 41-42)

III. DISCUSSION

Defendant Gadson seeks to suppress all evidence and testimony concerning a Taurus, Model PT709, 9mm pistol, a magazine loaded with seven rounds of 9mm ammunition, approximately thirty ecstasy pills, approximately 39.83 grams of marijuana, and a digital scale recovered during a stop and search of the vehicle defendant was operating on December 2, 2012. (Motion to Suppress Illegally Obtained Evidence (doc #30) at 1) Defendant contends that he did not commit a traffic infraction in that he did signal right. (Id. at 2) In the alternative, defendant argues that the law does not even require the use of a turn signal at a roundabout. (Id. at 4) Thus, according to defendant, the officers had no probable cause to stop the vehicle he was operating. (Id. at 3)

A.   The Stop and Arrest

The stop of defendant Gadson's vehicle was lawful.  As the Eighth Circuit Court of Appeals has observed, "a traffic violation--however minor--creates probable cause to stop the driver of the vehicle."  United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000).  Further, "it is well-settled that any traffic violation provides a police officer with probable cause to stop a vehicle, even if the officer conducted the valid traffic stop as a pretense for investigating other criminal activity."  United States v. Escamilla, 301 F.3d 877, 880 (8th Cir. 2002), cert. denied, 537 U.S. 1142 (2003).

Prior to the stop, Officer Porter observed defendant Gadson fail to signal a turn[1] and alerted other officers of the violation.  (See Fact Nos. 2 and 3, supra)  Kansas City, Missouri - Code of Ordinances section 70-454 provides in part:

(a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section 70-451, … or otherwise turn a vehicle from a direct course or move right or left upon a roadway, unless and until such movement can be made with reasonable safety.  No person shall so turn any vehicle without giving an appropriate signal in the manner provided in this division.

(b) A signal of intention to turn right or left, when required, shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

While this ordinance does not specifically mention signaling requirements for a traffic circle, it clearly requires a signal prior to turning a vehicle at an intersection or otherwise turning a vehicle from a direct course.  Officer Porter testified that defendant Gadson did not signal as he exited right from the traffic circle.  A fair interpretation of the ordinance would view this failure to signal

---

[1] While defendant Gadson contends in his briefing that he did signal before turning right, no evidence was presented to support this contention.

4

as a violation whether it be considered a failure to signal a turn at an intersection or a failure to signal a turn from a direct course. However, regardless of the proper interpretation of section 70-454, the Court finds that Officer Porter could have reasonably believed that defendant Gadson's failure to signal his intended turn violated section 70-454. If an officer's conclusion that a defendant violated the law by failing to signal a turn is objectively reasonable, a traffic stop based on that violation is valid under the Fourth Amendment. See United States v. Rodriguez-Lopez, 444 F.3d 1020, 1022-23 (8th Cir. 2006). See also Heien v. North Carolina, 135 S.Ct. 530, 540 (2014)(where it is objectively reasonable for an officer to believe there was a violation of a traffic law, even if the officer was mistaken on the law, reasonable suspicion exists to justify the stop); United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007)("Even if the officer was mistaken in concluding that a traffic violation occurred, the stop does not violate the Fourth Amendment if the mistake was an 'objectively reasonable one.'") The stop of defendant Gadson's vehicle was proper.

Defendant Gadson advised the officers who stopped him that he had a couple of city warrants. (See Fact No. 6, supra) Officer Dawdy conducted a computer check of Gadson which revealed several warrants for his arrest. (Id.) Gadson was placed under arrest. (Id.) The Court finds that the officers had probable cause to place defendant Gadson under arrest.

B.    Warrantless Search

In Arizona v. Gant, 556 U.S. 332 (2009), the United States Supreme Court provided the following basic guidance when analyzing a warrantless search:

> Consistent with our precedent, our analysis begins, as it should in every case addressing the reasonableness of a warrantless search, with the basic rule that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment−subject only to a few specifically established and well-delineated exceptions." Katz v. United

5

States, 389 U.S. 347, 357 (1967)(footnote omitted).

Gant, 556 U.S. at 338. One of the established exceptions to the warrant requirement that the Court listed was the "automobile exception." The Court stated:

> Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. ... If there is probable cause to believe a vehicle contains evidence of criminal activity, United States v. Ross, 456 U.S. 798, 820-21 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. ... Ross allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader.

Gant, 556 U.S. at 346-47. "Probable cause exists 'where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Cortez-Palomino, 438 F.3d 910, 913 (8th Cir. 2006)(quoting United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005)).

In the instant case, when Officer Dawdy had defendant Gadson step out of the vehicle, he detected an odor of marijuana. (See Fact No. 7, supra) Based on this fact, the Court finds that Officer Dawdy had probable cause to believe that marijuana was concealed within the vehicle. Thus, pursuant to the automobile exception, Officer Dawdy was authorized to conduct a warrantless search of the vehicle that was as thorough as a search authorized by warrant.

## IV. CONCLUSION

Given the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Gadson's Motion to Suppress Illegally Obtained Evidence (doc #30).

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and

serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

/s/ *Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE